[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
October 11, 2007
THOMAS K. KAHN
CLERK

_____

No. 07-11253
Non-Argument Calendar

_____

BIA No. A97-198-263

MARBI HESNEIDER HENAO,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals

_____

**(October 11, 2007)**

Before BIRCH, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Marbi Hesneider Henao seeks review of a Board of Immigration Appeals's ("BIA's") decision affirming, without opinion, an immigration judge's ("IJ's") order finding him removable and denying his applications for asylum, withholding of removal under the Immigration and Nationality Act ("INA"), and relief under the United Nations Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment ("CAT"), 8 U.S.C. §§ 1158, 1231, 8 C.F.R. § 208.16(c)). On appeal, Henao argues that substantial evidence does not support the IJ's findings that Henao failed to establish eligibility for asylum or for withholding of removal based on his political opinion.[1]

We conclude that substantial evidence supports the IJ's finding that Henao failed to demonstrate past persecution, but we remand this case to the BIA to consider the cumulative effect of all the evidence in the record and the incidents to which Henao testified at his asylum hearing in support of his claim of a well-founded fear of future persecution if he were removed to Colombia. Because it is unclear at this time whether Henao may be entitled to asylum relief in that respect,

_____

[1] We reject the government's assertion on appeal that Henao's asylum and withholding of removal claims should be dismissed for lack of jurisdiction as unexhausted or abandoned. However, we agree that Henao did not exhaust his claims for relief to the extent they were predicated on his membership in a particular social group. See Amaya-Artunduaga v. U.S. Att'y Gen., 463 F.3d 1247, 1250 (11th Cir. 2006) (per curiam) (discussing that an appellate court lacks jurisdiction to consider an unexhausted claim). Therefore, we dismiss in part Henao's petition to the extent he argues that he was persecuted based on his membership in a particular social group. Henao has abandoned his CAT claim by failing to raise this argument on appeal Irwin v. Hawk, 40 F.3d 347, 347, n.1 (11th Cir. 1994) (per curiam) (noting that a litigant abandons an issue by failing to challenge it on appeal).

2

we decline to address the IJ's finding that Henao failed to establish eligibility for withholding of removal. For the following reasons, we DISMISS IN PART, DENY IN PART, GRANT IN PART, and REMAND Henao's petition to the BIA for further proceedings consistent with this opinion.

## I. BACKGROUND

Henao entered the United States in 2002 from Medellin, Colombia, as a non-immigrant visitor with authorization to remain until 26 March 2003. In April 2003, after remaining in the United States beyond the time authorized, Henao filed an application for asylum and withholding of removal based on his political opinion and membership in a particular social group. He also sought CAT relief.

In his application, Henao alleged that he had been an active member of the Conservative Party since 1996 and worked on political campaigns of that party's candidates. Henao stated that, because of these activities, he received threatening telephone calls and letters from guerillas associated with the Revolutionary Armed Forces of Colombia ("FARC"), and was shot at on the street by two men on a motorcycle. Henao also noted that his brother-in-law, Justo Pastor Quintero Cardona, and his cousin, Aldemar Agudelo, were assassinated by FARC guerillas because of their participation in Conservative Party politics and campaigns.[2]

_____

[2] The administrative record contains two separate references to the murder of Henao's cousin, in addition to Henao's testimony at the removal proceedings. See Application for Asylum and Withholding of Removal, AR at 146; Credible Fear Interview Notes, id. at 87.

Asylum officials conducted a credible fear interview in July 2003. The Immigration and Naturalization Service ("INS") subsequently issued a notice to appear ("NTA") to Henao, charging him with deportability under the INA for remaining in the United States for a time longer than permitted. At a preliminary hearing before an IJ, Henao admitted the allegations in the NTA, conceded removability, and acknowledged that he was not statutorily eligible for voluntary departure.

In November 2005, Henao, through his attorney, submitted supporting documents, including, among others: (a) a notarized death certificate for Cardona indicating that he died on 28 July 1997, and the main cause of death was respiratory heart failure; (b) a notarized letter from the Secretary of the San Vincente Municipality indicating that Cardona was actually murdered by "illegal groups" on 29 July 1997, AR at 88, 93; (c) a notarized death certificate for Agudelo showing that he died of unspecified causes on 2 June 2002; and (d) a good behavior certificate from a local Colombian police inspector certifying that Henao had not been accused of any crimes or police violations in Colombia.

Henao further submitted a local police report, dated 4 September 2002, showing that he informed Colombian police that he found a death threat from the FARC when he arrived to work on 30 August 2002. According to the police report, Henao explained that the letter warned him not to participate in electoral

campaigns, and informed him that this would be his last warning. Henao indicated that he had received twelve prior warnings, and he also noted that his brother-in-law had been assassinated by the FARC because he was a local councilman.

In December 2005, an IJ heard, and denied, Henao's application for relief. In support of his claim of past persecution, Henao testified that he was targeted by the FARC because of certain political activities, including: (a) serving in the Colombian army for eighteen months, from 1994 until 1995; (b) joining the Conservative party; and (c) working for his brother-in-law, Cardona, a Conservative Party councilman, after graduating from high school in 1996. Henao asserted that the FARC sent him approximately ten to twelve threatening letters over a five or six year period (he last received a letter on 30 August 2002), and that FARC guerillas called his house to threaten him on numerous occasions.

Henao also testified that two gunmen tried to murder him in September 2002. He explained that, as he exited a taxi and walked towards his house, two men sitting on a running motorcycle across the street called his name and pulled out guns as he turned towards them. Henao ran from the gunmen into an open house, and he heard two shots fired. After escaping through the back door of the house, he ran to a friend's house, and later fled to the United States. Henao testified that he did not know who the individuals were, but presumed they were FARC guerillas because of the letters that he had received from the FARC.

5

In support of his well-founded fear of persecution claim, Henao testified regarding three violent crimes against members of his family, the assassinations of his brother-in-law, Cardona, and his cousin, Agudelo, and the kidnaping and murder of his nephew. After Cardona was killed, Henao testified that FARC guerillas returned to the Cardona home in 2004 looking for Henao, and warned Cardona's wife that if she did not tell them where Henao was hiding, they were going to kidnap her son. Cardona's wife apparently did not comply with the guerillas' demand, so they forcibly kidnaped her son, who was later found shot to death. Henao did not have his nephew's death certificate, though, because his sister could not go to the town where her child was killed.

Regarding Henao's eligibility for asylum based on past persecution, the IJ found that it was "very hard to believe" that Henao, as "a former military man," would have been intimidated by the threatening letters and telephone calls, because Henao's sister, not he, had answered these calls. AR at 37. Also, the IJ discounted the threatening letters from the FARC, noting that menacing letters do not rise to the level of past persecution. The IJ did not address the attempt on Henao's life when explaining his conclusion that Henao had not suffered past persecution.

In concluding that Henao failed to show a well-founded fear of future persecution, the IJ found "implausible" Henao's testimony that he heard the voices of the two men who shot at him over a running motorcycle engine, and that he was

6

able to "out run the bullet and … go into, conveniently, an open house and then … leave without these individuals pursuing him." Id. at 35-36. Alternatively, the IJ found that, even assuming that this testimony was true, Henao merely speculated – based on the letters that he had received from the FARC – that these two individuals were FARC guerillas who intended to kill him because of his past political involvement with the Conservative Party. The IJ found that Henao's testimony was too speculative to establish a well-founded fear of future persecution, but the IJ did not make an adverse credibility finding.

Although the IJ did not clearly address the requirement that there be a nexus between Henao's political opinion and activity and the threats and violence directed toward him, the IJ also found as speculative and not sufficiently detailed Henao's testimony that his involvement in the Conservative Party, his assistance with his brother-in-law's duties or campaigns, and his brother-in-law's death "stem[med] with threatening letters that occurred thereafter, none of which [the IJ] ha[d] before [him] . . ., or an incident of an alleged shooting, in [Henao's] general direction, in September of 2002." Id. at 36. In explaining his conclusion that Henao failed to demonstrate a well-founded fear of persecution, the IJ discussed neither Henao's testimony that his nephew was kidnaped and murdered by FARC guerillas, nor his testimony that his cousin was murdered by the FARC. Finally, the IJ found that, because Henao failed to meet the lower threshold for asylum

7

relief, he was not entitled to withholding of removal.[3]

Henao filed a timely appeal with the BIA. Henao asserted that the IJ erred in denying him relief because he "expose[d] [his] political ideas with the Conservative Party," but he did not mention his membership in a particular social group. Id. at 13. Henao submitted a supporting brief, essentially reiterating that he was persecuted by the FARC because of his political views and affiliation. Although Henao specifically noted that the FARC killed his nephew because they could not find him, and stated that I.N.S. v. Cardoza v. Fonseca, 480 U.S. 421, 107 S.Ct. 1207 (1987), was "similar to what happened to [him]," he did not expressly argue that the IJ's findings were inadequate or incomplete in any respect. Id. at 3

The BIA summarily affirmed the IJ's order, and Henao filed the present petition for review with this Court.

## II. DISCUSSION

A. Asylum – Past Persecution

Because the BIA summarily adopted the IJ's decision, we review the IJ's decision only. Nreka v. U. S. Att'y Gen., 408 F.3d 1361, 1368 (11th Cir. 2005). We review the IJ's factual determinations under the substantial evidence test, and "we affirm the [IJ's] decision if it is supported by reasonable, substantial, and

---

[3] The IJ noted that Henao was not eligible for CAT relief because the FARC was not part of the Colombian government.

8

probative evidence on the record considered as a whole." Forgue v. U. S. Att'y Gen., 401 F.3d 1282, 1286 (11th Cir. 2005) (internal quotations and citations omitted). The substantial evidence test is "deferential" and does not allow "re-weigh[ing] the evidence from scratch." Mazariegos v. U.S. Att'y Gen., 241 F.3d 1320, 1323 (11th Cir. 2001) (internal quotations and citation omitted). "To reverse the IJ's fact findings, we must find that the record not only supports reversal, but compels it." Mendoza v. U.S. Att'y Gen., 327 F.3d 1283, 1287 (11th Cir. 2003) (considering withholding-of-removal claim). The fact that evidence in the record may also support a conclusion contrary to the administrative findings is not enough to justify a reversal. Silva v. U.S. Att'y Gen., 448 F.3d 1229, 1236 (11th Cir. 2006) (citation omitted).

An alien in the United States may apply for asylum, which the Attorney General or Secretary of DHS may grant in his or her discretion, if the alien proves that he falls within the INA's statutory definition of "refugee." 8 U.S.C. § 1158(a)(1), (b)(1). See also Al Najjar v. Ashcroft, 257 F.3d 1262, 1284 (11th Cir. 2001). A "refugee" is defined as:

> any person who is outside any country of such person's nationality or, in the case of a person having no nationality, is outside any country in which such person last habitually resided, and who is unable or unwilling to return to, and is unable or unwilling to avail himself or herself of the protection of, that country because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political

opinion.

8 U.S.C. § 1101(a)(42)(A).

Accordingly, one way for an applicant like Henao to prove "refugee" status, and thus establish eligibility for asylum, is to demonstrate that he was the victim of past persecution based on a protected ground. See Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1230-31 (11th Cir. 2005) (per curiam). The INA does not define "persecution." However, we have held that persecution is an "'extreme concept,' requiring 'more than a few isolated incidents of verbal harassment or intimidation,' and that '[m]ere harassment does not amount to persecution.'" Id. at 1231 (citation omitted). "[A]ttempted murder is persecution." See Sanchez Jimenez v. U.S. Att'y Gen., 492 F.3d 1223, 1233 (11th Cir. 2007). By contrast, menacing telephone threats, without more, do not rise to the level of past persecution. See Sepulveda, 410 F.3d at 1231. In Silva, we concluded that a petitioner's evidence that she was shot at within a month of receiving a condolence note from the FARC raised an inference that the shooting was related to the note and, thus, on account of her political opinion; however, the record did not compel that conclusion. See Silva, 448 F.3d at 1239. In determining whether an applicant has established eligibility for asylum, we ask whether the "cumulative effects" of the alleged incidents of persecution amount to past persecution or a well-founded fear of future persecution. See Delgado v. U.S. Att'y Gen., 487 F.3d 855, 861-62 (11th

10

Cir. 2007) (per curiam) (concluding that a petitioner met his burden of demonstrating eligibility for withholding of removal based on the cumulative effect of the alleged acts of persecution).

Upon review of the record, and upon consideration of the briefs of the parties, we conclude that substantial evidence supports the IJ's finding that Henao failed to establish past persecution for asylum purposes. In support of his claim of past persecution, Henao testified that he was targeted by FARC because of certain political activities, including his service in the Colombian army from 1994 until 1995, his participation in the Conservative Party, and his work for his brother-in-law, Cardona, a councilman. Henao asserted that the FARC sent him approximately ten to twelve threatening letters over a five or six year period, and he last received a letter on 30 August, 2002. Henao presented one such letter to the asylum officer who conducted Henao's credible fear interview, but Henao destroyed the rest of the letters. Henao also alleged that FARC guerillas placed numerous threatening telephone calls to him at his house, but his sister received the calls, not he.

Henao further testified regarding the September 2002 attempted murder in which two individuals on a motorcycle shot at Henao. Henao testified that he did not know who the individuals were, but "presumed" they were FARC guerillas because of the letters that he had received from them. AR at 66. The IJ here found

11

that the shooting incident did not "stem[]" from his involvement in the

Conservative Party, or his assistance with his brother-in-law's duties or campaigns

– an apparent reference to a lack of nexus between the alleged acts of persecution

and Henao's political opinion. Id. at 36. Thus, while the shooting incident may

have amounted to persecution,[4] the record does not compel the conclusion that

Henao was persecuted by FARC guerillas on account of his participation in the

Colombian army or the Conservative Party. Moreover, the threatening telephone

calls and letters, without more, did not rise to the level of past persecution.

Accordingly, substantial evidence supports the IJ's finding in this respect.

B. Asylum – Well Founded Fear of Future Persecution; Withholding of Removal

Upon review of the record, and upon consideration of the briefs of the

parties, we conclude that Henao's petition for review should be granted, in part, to

allow the BIA to consider whether Henao has a well-founded fear of future

persecution, in light of the cumulative effect of all of Henao's testimony.

In the absence of past persecution, an applicant may prove that he is a

"refugee" by "demonstrat[ing] a well-founded fear of future persecution that is

_____

[4] In Sanchez Jimenez, we found that the record compelled the conclusion that petitioner "suffered persecution when two FARC members intentionally shot at him in his moving car." Sanchez Jimenez, 492 F.3d at 1234. In that case, the petitioner was able to offer evidence that the FARC later called him and took responsibility for the shooting. By contrast, in this case, because Henao was unable to establish that it was FARC members who had shot at him, or why he had been shot at, the record does not compel the conclusion that Henao suffered persecution as a result of the shooting. See Silva. 448 F.3d 1229, 1238 (11th Cir. 2006).

12

both subjectively genuine and objectively reasonable." Ruiz v. U.S. Att'y Gen., 440 F.3d 1247, 1257 (11th Cir. 2006) (per curiam). An applicant can satisfy the subjective component through "credible testimony that he … genuinely fears persecution, while the objective component can be fulfilled … by establishing that he … has a good reason to fear future persecution." Id. (internal quotations and citation omitted).

With respect to the objective component, the applicant may provide "specific, detailed facts showing a good reason to fear that he or she will be singled out for persecution on account of such an opinion." Id. at 1258 (emphasis added) (internal quotation marks and citation omitted). Alternatively, the applicant may show that:

> … there is a pattern or practice in his or her country of nationality or, if stateless, in his or her country of last habitual residence, of persecution of a group of persons similarly situated to the applicant on account of race, religion, nationality, membership in a particular social group, or political opinion; and
>
> … his or her own inclusion in, and identification with, such group of persons such that his or her fear of persecution upon return is reasonable.

8 C.F.R. § 208.13(b)(2)(iii)(A) - (B).

Where an IJ has given reasoned consideration to the petition, and made adequate findings, we will not require the IJ to "address specifically each claim" asserted by the petitioner "or each piece of evidence" presented by the petitioner.

13

Tan v. U.S. Att'y Gen., 446 F.3d 1369, 1374 (11th Cir. 2006). However, the IJ must "consider the issues raised and announce its decision in terms sufficient to enable a reviewing court to perceive that it has heard and thought and not merely reacted." Id. (quoting Vergara-Molina v. I.N.S., 956 F.2d 682, 685 (7th Cir. 1992)). Even if a particular circumstance, viewed in isolation, is insufficient to establish a well-founded fear of persecution, an IJ must consider the cumulative effect, if any, of all of the incidents to which the applicant testified in support of his argument. See Delgado, 487 F.3d at 861-62 (determining that the cumulative effect of alleged acts of persecution demonstrated that the petitioner was entitled to relief). "The Supreme Court has instructed that, when the IJ or BIA has not made findings of fact or has not applied the law to those facts, appellate courts should remand to allow the IJ to make such determinations in the first instance." Sanchez Jimenez, 492 F.3d at 1236 (citing I.N.S. v. Ventura, 537 U.S. 12, 16-17, 123 S.Ct. 353, 355-56 (2002) (per curiam)).

In this case, Henao testified at his asylum hearing about three separate violent incidents that support his claim of a well-founded fear of persecution if removed to Colombia – his brother-in-law's murder, his cousin's murder, and his nephew's kidnaping and subsequent murder, in addition to the telephone threats and letters he received. According to Henao, the FARC killed his nephew (whose mother is Henao's sister, who received the telephone threats directed at Henao)

because they could not find Henao himself. At the time Henao's nephew was murdered in 2004, Henao had been in the United States for at least one year. The fact that the FARC was still hunting Henao over a year after he fled to the United States is probative evidence that Henao may have a well-founded fear of future persecution by the FARC if he returned to Colombia.

Yet, in the IJ's subsequent legal analysis, the IJ referred only to the death of Henao's brother-in-law and the FARC's threatening phone calls and letters. The IJ discussed neither the murder of Henao's cousin nor the kidnaping and murder of Henao's nephew when explaining his legal conclusion that Henao failed to establish a well-founded fear of persecution.[5] "Although the IJ is not required to discuss every piece of evidence presented before him," Tan, 446 F.3d at 1376, we would have expected the IJ to address directly the murders of Henao's three family members when explaining his conclusion that Henao does not have a well-founded fear of future persecution. Thus, it appears that the IJ did not consider whether the cumulative effect of these murders, when viewed together with Henao's other testimony, would establish that he has a well-founded fear of future persecution based on political opinion if he were removed to Colombia.

---

[5]The IJ acknowledged that Henao testified that his nephew was kidnaped and murdered elsewhere in his opinion, but he did not address Henao's evidence or testimony regarding either his cousin's murder or his nephew's murder at any point in his reasoning regarding Henao's well–founded fear of future persecution.

15

Because the IJ did not explicitly discuss this issue, we vacate the BIA's decision in part and remand this matter to the BIA to provide a reasoned opinion addressing whether Henao has a well-founded fear of future persecution based upon the cumulative effect of the incidents about which he testified. We do not, however, express any opinion as to the merits of Henao's well-founded fear claim.[6]

### III. CONCLUSION

Henao has petitioned for review of a final order by the BIA affirming, without opinion, the IJ's order of removal and denial of Henao's claims for asylum, withholding of removal, and relief under the CAT. Having reviewed the record, we conclude that substantial evidence supports the IJ's decision that Henao has not suffered past persecution. However, we grant the petition in part and remand this matter to the BIA to consider, in the first instance, the cumulative effect of all of the incidents to which Henao testified at his asylum hearing in support of his claim of a well-founded fear of future persecution if removed to Colombia. Because the IJ denied Henao's withholding of removal claim solely because he did not meet the lower threshold for asylum relief, we decline to

---

[6] An alien seeking withholding of removal under the INA must show that his "life or freedom would be threatened in that country because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). An alien seeking withholding of removal, however, must demonstrate that he "more-likely-than-not would be persecuted or tortured upon his return to the country in question." Mendoza, 327 F.3d at 1287. We have explained that this burden of proof is "more stringent" than the burden to establish asylum eligibility. Sepulveda, 401 F.3d at 1232.

16

address whether substantial evidence supports the IJ's denial of withholding of removal.  **PETITION DISMISSED IN PART, DENIED IN PART, AND GRANTED IN PART.  THE BIA'S DECISION IS VACATED IN PART AND REMANDED TO THE BIA FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**